# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**JAMIE SIMMONS**                                  **CIVIL ACTION**

**VERSUS**                                                     **NO. 06-2130**

**N. BURL CAIN, WARDEN**                     **SECTION "C" (4)**

## ORDER AND REASONS

This matter is before the Court on a petition for writ of habeas corpus by Jamie Simmons, seeking relief pursuant to 28 U.S.C. § 2254.  The petitioner raises six claims for relief from his September, 2000 conviction of one count of distribution of cocaine.  In response, the state originally argued that his second through fifth claims were not exhausted in the state courts as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[1] and that therefore his petition should be dismissed in its entirety as a "mixed petition." Rec. Doc. 5.  In a traverse, the petitioner requested that, should the Court conclude that these claims were unexhausted, they be dismissed and that the Court render a decision on his remaining claims, or alternatively, that the Court grant a stay and allow petitioner to go back to the state courts and exhaust these claims.  Rec. Doc. 6; *see Pliler v. Ford*, 542 U.S. 225, 233 (2004); *Rhines v. Weber*, 544 U.S. 269 (2005).  However, the Court determined that the state had misunderstood

---

[1]Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

the nature of the exhaustion requirement, and that although it appeared that petitioner may be

procedurally barred from raising several of his claims, all of them were exhausted as required

under AEDPA, and ordered that the state respond to the merits of the petition.  Rec. Doc. 9.  The

state has now responded.  Rec. Doc. 12.  Having now thoroughly considered the petition, record,

memoranda of parties, and the law, the Court has determined that the petition for habeas corpus

is without merit.  For the reasons set forth below, this petition is DENIED.


## I. Background and Procedural History

In its initial order directing the state to respond to the merits of the petition, the Court

reviewed the background and procedural history of this case, and found that the petitioner was

"in custody" as required for this Court's review, that venue was proper, and that the petition was

timely filed under AEDPA.  The following facts are taken from the Statement of Facts of the

Louisiana Fifth Circuit Court of Appeals:

> The following factual statement was developed from the State's witnesses
> presented at trial. The defense rested without presenting any testimony.
>
> On August 11, 1999, Agent Mason Williams of the Jefferson Parish
> Sheriff's Office was working undercover in the Bridge City (Westwego)
> area of Jefferson Parish, purchasing narcotics. Agent Williams was driving
> a vehicle equipped with a video camera and an audio transmitter. Agent
> Derek Castine was a member of the surveillance team and monitored the
> transaction on the audio transmitter.
>
> At trial, Agent Williams testified that he stopped the vehicle when he saw
> a man, later identified as the defendant, riding a bicycle. Agent Williams
> asked the defendant if he had a "20," which Agent Williams explained
> was street language for one rock of crack cocaine. The defendant told

Agent Williams to drive around the block and Agent Williams complied. The defendant approached Agent Williams' vehicle, and Agent Williams asked the defendant to let him see the object. The defendant, however, instructed Agent Williams to drop the money on the ground. Ultimately, the defendant handed Agent Williams a rock-like object, then Agent Williams dropped the money on the ground. As Agent Williams drove away, he observed the defendant in the rear-view mirror retrieving the money. The videotape of this transaction was played for the jury at trial and the tape was entered into evidence as State's Exhibit 3.

After the transaction, Agent Williams gave Agent Castine the rock-like object and the videotape of the transaction. Agent Castine testified that the object field-tested positive for the presence of cocaine. According to Thomas Angelica, who was accepted as an expert forensic scientist at trial, the rock-like object weighed .30 grams and tested positive for the presence of cocaine.

Sometime after the transaction, Agent Castine and Sergeant Joe Williams viewed the videotape. Sergeant Williams testified that he recognized the defendant and supplied the defendant's name to Agent Castine. After viewing a photographic lineup prepared by Agent Castine, Agent Williams identified the defendant as the person who sold him the crack cocaine. Agent Williams also positively identified defendant at trial.

Opinion of Louisiana Fifth Circuit Court of Appeals, January 28, 2003, at 3-4, State Rec. Vol. 1,

*State v. Simmons*, 2002-960 (La.App.5 Cir. 1/28/03), 839 So.2d 239, 241-42.

II.  PETITIONER'S CLAIMS

### A. Standard of Review

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for

questions of fact, questions of law, and mixed questions of law and fact for habeas petitions.

The statute now provides that if a state court has adjudicated a claim on the merits, pure

questions of law and mixed questions of law and fact are reviewed under 28 U.S.C.§ 2254(d)(1).

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Questions of fact are reviewed under 28

U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law and mixed questions of law and fact, a federal court must

defer to the state court's decision unless it was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C.§ 254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application"
> clauses have independent meaning.  A federal habeas court may
> issue the writ under the "contrary to" clause if the state court
> applies a rule different from the governing law set forth in our
> cases, or if it decides a case differently than we have done on a set
> of materially indistinguishable facts. The court may grant relief
> under the "unreasonable application" clause if the state court
> correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular
> case. The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable, and . . . an unreasonable application is different from
> an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal
> citations omitted).

As to questions of fact, a state court's factual findings are presumed to be correct and a

federal court "will give deference to the state court's decision unless it was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

### B. Petitioner's Claims

Petitioner raises the following claims in his petition:

1.      The trial court imposed an excessive sentence upon petitioner in violation of the United States Constitution, and the sentence imposed constitutes cruel, unusual or excessive punishment.

2.      The petitioner was denied his constitutional right to testify in his own behalf.

3.      The state presented insufficient evidence to support the jury's finding of guilt at trial.

4.      The petitioner's right to a fair trial was violated when the trial court allowed inadmissible evidence to be presented to the jury during deliberations.

5.      The state presented insufficient evidence to support a finding of petitioner's habitual offender status.

6.      Petitioner's constitutional right to effective assistance of counsel was violated when counsel failed to object to the state's failure to present sufficient evidence of petitioner's habitual offender status.

### C. Procedural default

In its original response, the state erroneously argued that because petitioner's second through fifth claims, presented in petitioner's application for post-conviction relief, were denied by the state trial court as procedurally barred, they were unexhausted.  Although the state was incorrect in this argument, it correctly contended that these claims are in procedural default and barred from federal review.   Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v.*

5

*Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.

    This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).  In this case, the trial court, in its December 21, 2004 ruling, dismissed the second through fifth claims because of petitioner's failure to raise those claims in an earlier proceeding and/or on appeal.  State Rec. Vol. 1.  The court relied upon LA.CODE CRIM.P. art. 930.4 in denying petitioner's federal second through fifth for relief,[2] and ruled that:

------

[2] La. Code Crim.P. art. 930.4 reads in its entirety:

Art. 930.4. Repetitive applications
A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.
B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.
C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

> The defendant is procedurally barred from raising this [sic] claim on post-conviction application.  Although La. C.Cr.P. Art. 930(F) requires a petitioner to explain why he failed to raise a certain issue in an earlier proceeding, the Louisiana Supreme Court has held that an application for post-conviction relief provides the petitioner with an opportunity to explain his failure to raise a claim earlier and allows the court to undertake the informed exercise of his discretion and to determine whether default of the application is appropriate pursuant to LA C.Cr.P. Art. 930.4(F).  State ex rel. Kenneth W. Rice v. State v. Louisiana, 749 So.2d 650, [99-KH-0496] (La. 1999).  Upon review, the defendant has not articulated any reason these particular issues were not raised in an earlier proceeding and/or on appeal.  Moreover, he has not demonstrated that his trial and/or appellate counsel were ineffective for not raising these claims.  Thus, the defendant is not entitled to the relief sought.

December 21, 2004 decision, State Rec. Vol. 1.  The Louisiana Fifth Circuit found no error in trial court's ruling, State Rec. Vol. 4, and the Louisiana Supreme Court denied the subsequent writ without reasons.  *Id.*  Thus, the trial court's ruling was the last reasoned decision on the issue. *Ylst*, 501 U.S. at 802.

Therefore, it appears the state courts barred review of Rodriguez' claims based on procedural default pursuant to LA. CODE CRIM. P. arts. 930.4(B) and/or (C).[3]  This Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review.  For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

---

D. A successive application may be dismissed if it fails to raise a new or different claim.

E. A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

F. If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

[3] The trial court's ruling regarding petitioner's ineffectiveness of counsel claim is discussed more below.

**a. Independent State Ground**

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. For the reasons outlined above, there is no question that the state trial court relied exclusively on rules of Louisiana procedural default, independent of federal law, in reaching its decision. *See e.g.*, *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Art. 930.4).

**b. Adequate State Ground**

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*. This federal habeas court must therefore evaluate the adequacy of the rules applied to bar petitioner's claims.

In doing so, a federal habeas court does not sit, however, to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F.Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal habeas court's analysis

focuses on due process considerations, and due process requires only that the Court grant the

writ when the errors of the state court make the underlying proceeding fundamentally unfair.

*Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761

F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

      In keeping with this rule, a state procedural rule that is applied arbitrarily or in an

unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*,

98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of
> procedure, but must evaluate whether the rule was actually
> applicable on the particular facts of the case.  Otherwise, state
> courts could disregard federal rights with impunity simply by using
> the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or

basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, 2001 WL 611164

at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D.

La.) (J. Berrigan) (Art. 930.8 bar was not adequate because it was not properly applied under the

circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La.) (J. Mentz) (Art. 930.8

was not adequate to bar review because it was misapplied).  However, where such a basis exists

in state law, the bar must stand.

      As noted above, the basis for dismissal of these claims was the state procedural ground

found in LA. CODE CRIM. P. arts. 930.4(B) and/or (C).  According to the reasons given by the

trial court, petitioner should have raised the claims in an earlier proceeding and/or on appeal.

In his petition, Simmons contends that under LA.C.CR.P. Art. 930.4(F), the court must first afford petitioner the opportunity to state why he failed to raise the claim in an earlier opinion, which could be construed as an argument that the court applied the state rules arbitrarily, or inconsistently, so as to make them inadequate to prevent federal review. Petitioner argues that the trial court failed to order him to explain why he had not submitted his claims in earlier proceedings as required by art. 930.4(F).

However, according to the trial court, petitioner utilized the *Uniform Application for Post-Conviction Relief*, the use of which is required by LA. CODE CRIM.P. art. 926(D).  State Rec. Vol. 1.[4]  This form provides specific information to the petitioner regarding repetitive applications, including the possibility that his claims would be dismissed.  A specific space was provided on which he could explain the reasons for his failure to raise the claim previously.   In reviewing a habeas petition that raised a similar claim that the state court had failed to order a response explaining petitioner's failure to raise his claims previously this Court has explained:

> Louisiana courts have determined that this opportunity-to-explain on the Uniform Application provides the district judge with the information needed to exercise her discretion on whether to procedurally default the application.  *See Rice v. State*, 749 So.2d 650 (La. 1999).  "Proper use of the Uniform Application thus

---

[4] This Court can only locate petitioner's memorandum in support of his application in the record, and not the *Uniform Application* itself.  However, in its response to his application in the trial court, the state references his use of the *Uniform Application*, and the state trial court referred to his use of the *Uniform Application* in its decision. In addition, petitioner has never refuted the contention that he utilized the *Uniform Application* in his subsequent writ applications to the appellate and state supreme court.  State Rec. Vols. 3 and 4.  Nor has he in his federal petition.  In each, he has merely repeated the assertion that he was never afforded the opportunity to state why he failed to raise his claims in his appeal.  Moreover, he did not attempt to explain to the state appellate or supreme court, or this Court, what his reasons were for failing to raise his claims on appeal.  In addition, as noted above, use of the Uniform Application is required by LA.C.CR.P. Art. 926(D). Based on all of this, this Court can only defer to the state trial court's finding that petitioner did in fact utilize the *Uniform Application*, and conclude that he instead argues that reliance on his use of the *Uniform Application* is not sufficient to satisfy Art. 930.4(F).

> satisfies the requirements of Art 930.4(F) without the need for
> further filings, formal proceedings, or a hearing." *Id.*  Therefore,
> Petitioner's argument that procedural default is inapplicable is a
> non-starter because the trial judge is deemed to have complied
> with art. 930(F) by virtue of the petitioner's having filed a Uniform
> Application.

*Hess v. Cain*, 2005 WL 1038558, *3 (E.D.La) (J. Berrigan).  Thus, the failure of the trial court to

independently order additional filings from the petitioner before denying his claims pursuant to

art. 930.4 does not render the state grounds inadequate or excuse the procedural default.  Under

this situations, art. 930.4(B) and (C) were adequate support for the state courts' conclusion that

post-conviction review of his claims was barred.

However, petitioner will be excused from these procedural bars to review if he can show

cause for his failure to raise the claims properly and prejudice from the failure to review the

claims.

### c. Cause and Prejudice

To establish a cause for his procedural default, Simmons must demonstrate that "some

objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Although he complains of the

trail court's failure to afford him an opportunity to explain his failure to earlier raise his claims,

he has not demonstrated, nor even attempted to demonstrate in his pleadings the existence of any

objective factor external to the defense that impeded his ability to raise these claims in a

procedurally proper manner.

Furthermore, despite any attempt by petitioner to show cause for his procedural default,

the state trial court considered the possibility of ineffective assistance of appellate counsel, and

reasoned that "[i]n the instant case, none of the defendant's claims seem to go beyond strategic

choices made by his counsel at the time of the defendant's trial or appel." December 21, 2004

decision, State Rec. Vol. 1. The United States Supreme Court has held that "the mere fact that

counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim

despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at

486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a petitioner must first prove that

counsel's actions were constitutionally deficient before such a claim can stand as cause for a

procedural default). Appellate counsel need not advance every argument, regardless of merit,

urged by an appellant. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985), *citing Jones v. Barnes*, 463

U.S. 745 (1983). The Supreme Court noted in *Jones* that experienced advocates have

emphasized the importance of "winnowing out weaker arguments on appeal and focusing on one

central issue if possible, or at most on a few key issues," and that "a brief that raises every

colorable issue runs the risk of burying good arguments." *Jones*, 463 U.S. at 751, 753.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice'

exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466,

497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, because he has

failed to show an objective cause for his default, the Court need not determine whether prejudice

existed. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551

F.2d 680, 681-82 (5th Cir. 1977)).

Simmons' second through fifth claims are therefore procedurally barred from review by

this court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded

when petitioner neglected to allege actual prejudice and cause of failure to comply with state

procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on*

*other grounds*, 522 U.S. 87 (1998).

### d. Fundamental Miscarriage of Justice

Simmons' only remaining means of escaping this bar is if he can establish that a

fundamental miscarriage of justice will occur if the merits of his claims are not reviewed.

*Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish this, a

petitioner must provide the court with evidence that would support a "colorable showing of

factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at

496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must

establish a fair probability that, considering all of the evidence now available, the trier of fact

would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958

F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual

innocence factor requires a showing by clear and convincing evidence that "but for constitutional

error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Simmons has not pointed to any new or existing evidence which would create a

reasonable doubt as to his guilt or which would establish his actual innocence of the crimes

charged.  *Murray*, 477 U.S. at 496.   Although he raises a claim of insufficiency of the evidence

and argued the possibility of misidentifcation at trial, including what he argued were

discrepancies between the person shown in a video of the drug transaction and himself, these

issues were raised in cross-examination of the officer who identified petitioner.  Tr. Transcript at 33-39, State Rec. Vol. 2.  The jury was presented with the testimony, videotape evidence, and the defense at trial, and convicted having been able to fully consider the issues raised by petitioner.  Petitioner does not point to any new evidence that would establish his actual innocence.  When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Because Simmons has not met any exception to the procedural bar, his procedurally defaulted claims must be dismissed with prejudice without review of the merits.  The Court will now turn to the merits of petitioner's undefaulted first and sixth claims.

### D. First Claim: Excessive Sentence

A federal court considering a habeas petition will not upset a state sentence within the statutory limits unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).  Here, the petitioner was convicted of distribution of cocaine, and thereafter adjudicated as a third felony offender based on two predicate offenses - simple burglary of an inhabited dwelling and distribution of cocaine.  The statutory penalty for conviction as a third felony offender for these offenses under LA.REV.STAT. 15:529.1(A)(1)(b)(ii) as it existed at the time petitioner committed the underlying offense is a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.  Sentences within the statutory limits are entitled to a presumption of constitutionality.   *Nicks v. Cain*, 2005 WL 1578024, 8 (E.D. La. 2005). The "burden is on the

defendant to rebut the presumption of constitutionality by showing that he is exceptional." *Id.* Here, while the petitioner agrees that under the version of the law in place at the time the offense was committed he was subject to a minimum of life imprisonment, Rec. Doc. 1-3 at 4, he argues that the state courts failed to take into consideration all of the factors which would have made the imposition of a life sentence unjustifiable. He argues that he has a history of non-violent drug offenses indicating that he has been addicted to cocaine his entire life, that the amount of cocaine sold was very small, and the facts do not reveal him to be a major narcotics trafficker. However, these facts, even if true, do not show that petitioner's situation is so exceptional, or the sentence grossly disproportionate. The defendant suggests that the trial court evidenced a desire to apply a less harsh sentence, but inappropriately concluded that it was compelled by the habitual offender statute to impose a life sentence "simply by the mere tally of his conviction record." Rec. Doc. 1-3 at 7. However, on review of the transcript of the multiple offender hearing, the statement of the trial court that petitioner points to, that it "was hoping I could finesse this...," was a reflection of the court's confusion over whether the old statute, or one passed since the crime was committed, would apply. The court was "hoping" that the two statutes would impose the same sentence, which is clear when the court's statement is read in context and in its entirety: "I was hoping I could finesse this so that it would conform with the old and new law, but I can't because he is a mandatory lifer under the old law...." Sentencing transcript at 17, State Rec. Vol. 1. (The state appellate court on review concluded that both the old and amended statute provided for a mandatory life sentence in petitioner's case, a conclusion that petitioner acknowledges in his petition. *Simmons*, 839 So.2d at 242-43; Rec. Doc. 1-3 at 4.)

15

Nothing about the petitioner's situation shows that it is exceptional.  The state appellate court considered this claim at length on petitioner's direct appeal, and reasoned that "[t]o the contrary, he seems to be the very type of recidivist individual for whom the Habitual Offender Law has been designed."  *Simmons*, 839 So.2d at 244.  The court detailed the circumstances of petitioner's prior convictions, which both included multiple burglary and distribution charges, respectively, to which the petitioner agreed to plead guilty in return for the state not filing multiple bills against him.  *Id.*   The court also considered that the defendant had no violent predicate offenses, but noted that such a consideration had already been factored into the minimum sentence under the Louisiana habitual offender statute.  *Id.* at 244-45 (citing *State v. Johnson*, 709 So.2d 672 (La. 1998)).  This Court defers to the state courts on this claim finding nothing contrary to, or involving any unreasonable application of, clearly established Federal law.  Petitioner has failed to establish that his presumptively constitutional sentence was excessive, that his sentence was completely arbitrary or shocking, or that his sentence fell outside the statutory limits.

### E. Sixth Claim: Ineffective assistance of counsel for failure to object to the state's failure to present sufficient evidence of petitioner's habitual offender status.

This claim is related to petitioner's defaulted fifth claim, in which he argues that the state failed to present sufficient evidence to support a finding that he was a habitual offender, and in particular, that his conviction as a multiple offender was contrary to federal constitutional law because the state failed to prove his prior convictions were obtained pursuant to guilty pleas that

16

were intelligently and voluntarily made.  *See Boykin v. Alabama*, 395 U.S. 238 (1969) (holding

that it was reversible error for a state trial judge to accept a plea of guilty without an affirmative

showing that it was intelligent and voluntary).   Petitioner contends that his trial counsel was

ineffective, in violation of his Sixth Amendment right counsel, for failing to object to the state's

failure to present sufficient evidence.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the

United States Supreme Court established a two-prong test for evaluating claims of ineffective

assistance of counsel.  A petitioner seeking relief must demonstrate both (1) counsel's

performance was deficient *and* (2) that the deficient performance prejudiced his defense.

*Strickland*, 466 U.S. at 687.

> To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct

fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *Styron v.

Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "Counsel's

performance is deficient if it falls below an objective standard of reasonableness."  *Little v.

Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  An analysis of an attorney's performance must take

into account the reasonableness of counsel's actions in light of all the circumstances.  *Strickland*,

466 U.S. at 689.  "[I]t is necessary to judge . . . counsel's challenged conduct on the facts of the

particular case, viewed as of the time of counsel's conduct."  *Lockhart v. Fretwell*, 506 U.S. 364,

371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong

presumption that the conduct of his counsel falls within a wide range of reasonable

representation.  *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751

F.2d 1432, 1441 (5th Cir. 1985).

17

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The Fifth Circuit has adopted the *Strickland* test holding: "[d]eficient performance is prejudicial only upon a showing that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F. 3d at 860-61.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also, Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  *Strickland*, 466 U.S. at 697.  Furthermore, a claim of ineffective assistance of counsel is a mixed question of law and fact.  *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003).  Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

18

U.S.C.§ 2254(d)(1).

The trial court considered this claim, which was included in petitioner's application for post-conviction relief, in its December 21, 2004 decision.  After laying out the *Strickland* standard the court discussed the claim:

> In the instant case, none of the defendant's claims seem to go beyond strategic choices made by his counsel at the time of the defendant's trial or appeal...[t]he State presented fingerprint evidence the [sic] he was one and the same person previously convicted of a simple burglary and distribution of cocaine.  It also introduced certified copies which proved the prior convictions were not constitutionally deficient.  The matter was heard, argued and submitted by both sides.  Moreover, defendant's claims are essentially with his counsel's decisions regarding evidence and witnesses used at trial.  These are considered trial tactics for purposes of evaluating the performance of defendant's counsel.  Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the *Strickland* test, the defendant has failed to meet the two-prong test.

December 21, 2004 decision, State Rec. Vol. 1.

In essence, petitioner argues that his counsel's failure to put the state to its burden of proof rendered his counsel constitutionally ineffective, and entitles him to relief on this claim. This Court has recently examined a similar claim in a petition for habeas corpus relief:

> In challenging the sufficiency of the evidence introduced to prove his prior conviction, petitioner cites the Louisiana Supreme Court decision, *State v. Shelton,* 621 So.2d 769 (La.1993), and claims that the state was required, and failed, to introduce affirmative proof that his prior guilty plea was voluntarily and knowledgeably made. It should have introduced, for example, a contemporaneously recorded transcript of his guilty plea and waiver. The *Shelton* court held that, "[i]f the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was

19

> represented by counsel when they were taken." *Shelton*, 621 So.2d
> at 769. In considering a Kentucky habitual offender sentencing
> statute, the United States Supreme Court recognized the
> presumption of regularity that attaches to final judgments. *Parke v.
> Raley*, 506 U.S. 20 (1992). The Court held that this presumption
> would be improperly ignored if the *Boykin* presumption of
> invalidity applied on direct review were to be imported to
> recidivism proceedings in which final judgments are collaterally
> attacked. *Id.* at 29. In other words, the state in this situation,
> introducing evidence of a prior conviction in a habitual offender
> proceeding, was not required to introduce further evidence that
> Williams voluntarily and understandingly plead guilty to the arson
> charge unless he challenged the plea ... Perhaps recognizing the
> deficiency of his third claim for this reason, petitioner argues in his
> fourth claim that his right to effective assistance of counsel was
> violated when his counsel failed to object to the sufficiency of the
> evidence of petitioner's habitual offender status … Here, the
> petitioner's claim fails both prongs of the *Strickland* test. There is
> no evidence that counsel's performance was deficient because he
> failed to object to the sufficiency of the state's evidence.

*Williams v. Cain*, 2008 WL 294553, *8-9 (E.D.La. 2008) (Berrigan, J.). The transcript and minute entry of the multiple bill hearing in this case reflects that the state presented sufficient evidence, in the form of expert testimony, fingerprint cards, and certified copies of the prior convictions. *See* transcript and minute entry of Multiple Bill Hearing, August 2, 2001, State Rec. Vol. 1; *see also* Rec. Docs. 14 and 16. At no point did the defense object to the voluntariness or intelligence of the guilty pleas to the prior offenses, or otherwise to the evidence of the prior convictions. Indeed, at no point did the defense deny the allegations contained in the bill of information at all. Rather, defense counsel argued only that the petitioner should be subject to sentencing under the recently amended habitual offender statute, instead of the old

20

version, reflecting counsel's understanding, later proved erroneous, that the sentence would be shorter under the new version.

However, as in the *Williams* case, petitioner has not met his burden to show either prong of *Strickland* has been met.  There is no indication that petitioner ever indicated to his counsel that he contended his prior pleas were not voluntary.  Petitioner has not produced any evidence, or even contended directly, that his prior pleas were not made intelligently or voluntarily. Rather, he only contends that the state has failed to meet its burden.  However, as discussed above and stated in *Shelton*, the state only has the burden to prove the constitutionality of the pleas (when not on direct review of those pleas) when the defendant has produced some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.  *Shelton*, 621 So.2d at 779.  Petitioner has never produced such affirmative evidence, and thus there is no reason to believe such evidence exists.  Consequently, counsel was not deficient for failing to object on these grounds.

Furthermore, petitioner also fails to show any prejudice.  The record, contrary to petitioner's contentions, does reflect that certified copies of his waiver of constitutional rights forms from his earlier convictions were introduced at the multiple bill hearing, in state's exhibits 3 and 4 (containing four and six pages respectively).  Transcript and minute entry of Multiple Bill Hearing, August 2, 2001, forms from prior convictions, all in State Rec. Vol. 1; *see also* Rec. Docs. 14 and 16.  Therefore, had counsel objected to the evidence supporting the convictions, and had the defense come forward with affirmative evidence showing an infringement of rights or procedural irregularity in the taking of petitioner's prior pleas, the state

21

had already produced sufficient evidence to rebut such a claim.  Thus petitioner can not show he was prejudiced by counsel's failure to object.  As a result, petitioner's sixth claim fails on its merits.


### III. CONCLUSION

Having considered the petition, the record, and the applicable law, the Court determines that the petitioner has not established that his state conviction or sentencing present grounds for the relief requested.  Accordingly,

IT IS ORDERED that the petition of Jamie Simmons be hereby DENIED WITH PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana, this 20th day of May, 2008.


HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE